# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ANTHONY SCIACCA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-cv-2030 (KBJ)(JMF) |
| | ) | |
| FEDERAL BUREAU OF | ) | |
| INVESTIGATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

The Federal Bureau of Investigation ("FBI") began to investigate Plaintiff Anthony Sciacca ("Sciacca") in the late 1990s as part of a wider investigation into an organized crime group. (Second Declaration of David M. Hardy ("Hardy Decl."), ECF No. 12-1, ¶ 5.) On May 7, 2001, Sciacca pled guilty in the United States District Court for the Eastern District of New York to a charge of racketeering in violation of 18 U.S.C. § 1962(c), and on November 8, 2001, a judge of that court sentenced Sciacca to 23 years in federal prison, where he remains to this day. (*Id*. ¶¶ 5-6.) Sciacca has brought this action against the FBI, the Department of Justice ("DOJ"), and DOJ's Office of Information and Privacy ("OIP") (collectively, "Defendants") alleging that Defendants have mishandled a document request that Sciacca submitted in 2006, pursuant to the Freedom of Information Act, 5 U.S.C. § 552, ("FOIA"). (*See generally* Complaint ("Compl."), ECF No. 1.) Defendants filed a motion for summary judgment on May 4, 2009, which the Court referred to Magistrate Judge John M. Facciola.

On February 16, 2012, Magistrate Judge Facciola issued a Report and

Recommendation finding that the Court should deny Defendants' summary judgment

motion. As discussed further below, because Defendants have failed to provide this

Court with sufficient information to evaluate the propriety of the various FOIA

exemptions that Defendants have invoked to withhold and redact presumably responsive

documents, the Court will adopt the Report and Recommendation as a part of its

opinion and **DENY** Defendants' summary judgment motion without prejudice. As the

Order accompanying this Memorandum Opinion states, Defendants will now have the

opportunity to submit supplemental declarations and/or a *Vaughn* index that provides

the necessary information.

## I.    BACKGROUND & PROCEDURAL HISTORY

On December 19, 2006, Sciacca submitted a FOIA request to the FBI's New

York Field Office seeking documents related to his criminal case. (Hardy Decl. ¶ 7.)

Specifically, Sciacca requested: "all records in possession of the Federal Bureau of

Investigation on myself or which makes reference to myself." (*See* Hardy Decl.,

Exhibit A, ECF No. 12-2, at 2.)

On November 15, 2007, the FBI informed Sciacca that they had been unable to

locate any documents responsive to his request, claiming that Sciacca's case documents

were not in their expected storage location and could not be found elsewhere after a

reasonable period of time. (Hardy Decl. ¶ 11.) The FBI further notified Sciacca that

he had a right to appeal this "unable to locate" result to the OIP. (*Id*.) Sciacca availed

himself of this appeal on December 3, 2007. (*Id.* ¶ 12.)

On March 3, 2008, the OIP advised Sciacca that relevant records had been found after a second search, but that the FBI would nonetheless withhold all of the records pursuant to FOIA Exemption 7(A), 5 U.S.C. § 552(b)(7)(A), which exempts from the reach of FOIA "records or information compiled for law enforcement purposes" to the extent the production of such records "could reasonably be expected to interfere with enforcement proceedings." (*Id*. ¶ 14.) Then, on November 16, 2008, Sciacca filed suit in this Court. (*See* Compl.) Sciacca styled his complaint as alleging violations of his due process and equal protection rights; however, the substance of his complaint is simply an allegation that the FBI violated the FOIA statute in its handling of Sciacca's request. (*See id.* at 5-6.) As relief, Sciacca seeks an order directing the FBI to release the requested documents. (*Id*. at 7.)

On March 4, 2009, approximately three and a half months after Sciacca filed his complaint, the FBI produced 281 pages of the records Sciacca had requested, in full or in part, out of 365 pages it claimed to have reviewed at that point, withholding the remaining 84 pages in full. (Hardy Decl. ¶ 16.) The FBI asserted various FOIA exemptions to justify its redactions of the produced documents and its withholding the remainder of the documents, including Exemption 2, which pertains to matters that are "related solely to the internal personnel rules and practices of an agency," 5 U.S.C. § 552(b)(2); Exemption 3, which relates to matters that are "specifically exempted from disclosure by statute," 5 U.S.C. § 552(b)(3); Exemption 6, which protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), and Exemption 7, which applies to "records or information compiled for law enforcement purposes,"

5 U.S.C. § 552(b)(7).  (*Id.*)[1]  On April 30, 2009, the FBI produced to Sciacca another 141 pages, in full or in part, out of an additional 279 pages it had reviewed, withholding the remaining 138 pages in full, and invoking the same FOIA exemptions as before to justify its redactions and withholding.  (*Id.* at ¶ 17.)

### A. Defendants' Motion For Summary Judgment And Accompanying Declaration

On May 4, 2009, Defendants moved for summary judgment on Plaintiff's claims, asserting that the productions they had made satisfied any FOIA obligations, and thus no genuine questions of material fact remained in the case.  (See Mem. in Supp. of Defs.' Mot. For Summ. J. ("Defs.' Br."), ECF No. 12, at 1.)  In support of the motion, Defendants submitted a lengthy declaration from David M. Hardy, the Section Chief of the Record/Information Dissemination Section, Records Management Division of the FBI.  (Hardy Decl. ¶ 1.)

The Hardy Declaration begins with a summary of the procedural history of Sciacca's FOIA request, then explains the organization of the FBI's central records system and details the steps taken to search for and review records responsive the Sciacca's request.  (*Id.* ¶¶ 7-33.)  The Declaration notes that two separate tranches of records were produced to Hardy—the first comprised of 281 of 365 responsive pages

---

[1] Exemption 7 itself contains six separate subcategories.  Defendants invoked three of these in redacting and withholding information otherwise responsive to Sciacca's request: Exemption 7(C), which covers records compiled for law enforcement purposes that "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C); Exemption 7(D), relating records compiled for law enforcement purposes that "could reasonably be expected to disclose the identity of a confidential source," 5 U.S.C. § 552(b)(7)(D); and Exemption 7(E), which applies to records compiled for law enforcement purposes that "would disclose techniques and procedures for law enforcement investigations," 5 U.S.C. § 552(b)(7)(E).  (*See* Hardy Decl. ¶ 40.)

produced in full or in part; the second comprised of 141 of 279 responsive pages produced in full or in part.  (*Id.* ¶¶ 16-17.)[2]

Next, the Hardy Declaration goes on to explain the coding system used to redact portions of the pages produced to Sciacca.  It notes that each produced page "on its face contains coded categories of exemptions which detail the nature of the information withheld," and that these "coded categories" appear next to the specific information that has been withheld (that is, redacted).  (*Id.* ¶ 39.)  Moreover, in addition to identifying the type of information redacted, the coded categories displayed on each page also identify which specific FOIA exemption the information implicates.  (*Id.*)  In other words, each "coded category" appearing next to a specific redaction conveys two pieces of information to the reader:  1) the type of information redacted; and 2) the specific FOIA exemption (or exemptions) that justify redacting that type of information.  As an example, the Declaration states that

> on Bates Page SCIACCA-2 "Exemption (b)(7)(C)-1" is cited
> to protect the names and/or identifying information
> concerning FBI Special Agents and Support Employees.
> The '(b)(7)(C)' designation refers to Exemption (b)(7)(C) of
> the FOIA concerning Unwarranted Invasion of Personal
> Privacy.  The numerical designation '1' following the
> (b)(7)(C) narrows the category of protected information
> from the main category to the more specific subcategory of
> "FBI Special Agents and Personnel."

(*Id.* ¶ 39.)

The Hardy Declaration goes on to list eighteen different types of information redacted in the records produced to Sciacca.  (*Id.* ¶ 40.)  For each of these types of information, the Declaration lists the corresponding coded category (or, in some cases,

---

[2] While the Hardy Declaration does not so specify, the Court assumes that the difference between the number of total responsive pages and the number of pages released to Sciacca consists of pages withheld in full.

categories) that identifies the specific FOIA exemption that justifies redacting that type of information wherever it appears in the records produced to Sciacca. (*Id.* ¶ 40.) For example, the Declaration identifies "Confidential Source Symbol Numbers," as having category code (b)(2)-1. (*Id.*) Thus, wherever the coded category (b)(2)-1 appears next to a redaction in the records produced, it indicates to the reader that Defendants have redacted a Confidential Source File Number because they believe that such numbers are exempt from disclosure under FOIA Exemption 2.

In some cases, multiple coded categories are listed for a particular type of information, indicating that Defendants believe that more than one FOIA exemption authorizes redacting that particular type of information. For example, the entry for Confidential Source Symbol Numbers not only identifies that type of information as having coded category (b)(2)-1, but also notes that it is "cited in conjunction with [coded category] (b)(7)(D)-2," (*id.*) which protects information that "could reasonably be expected to disclose the identity of a confidential source." 5 U.S.C. § 552(b)(7)(D). In other words, the categorization system outlined in the Hardy Declaration attempts to identify each different type of information that was redacted from the records produced to Sciacca, and also to identify which FOIA exemption or exemptions are applicable to each of those types of information.

After explaining how Defendants categorized the redactions in the records that they produced, the Hardy Declaration goes on to explain the justification behind the redaction of each of the eighteen types of information, including why FOIA Exemptions 2, 3, 6, and/or 7, respectively, justify redacting those types of information. (Hardy Decl. ¶¶ 42-86.) For example, in discussing Defendants' decision to redact

Confidential Source Symbol Numbers pursuant to FOIA Exemptions 2 and 7(D), the Declaration explains that a "Confidential Source Symbol Number" is an internal FBI designation used to identify the source of information used in FBI reports, and that "release of these source symbol numbers would indicate both the scope and location of FBI informant coverage within a particular geographic area" and could potentially be used to identify confidential sources. (*Id.* ¶¶ 44-45.) For each of the eighteen types of information, the Hardy Declaration provides a similar explanation, and then identifies the Bates number of each produced page that that type of information appears on—for example, code category (b)(2)-1 "has been cited on the following pages: SCIACCA-293, 314, and 317." (*Id.* ¶ 45.)

Finally, the Hardy Declaration includes a statement that the pages that were withheld in full contain no "reasonably segregable" information, such that if they were redacted and released, all that would actually be produced would be "a patchwork of unintelligible text." (*Id.* ¶ 87.)

In his opposition to Defendants' motion for summary judgment, Sciacca raises two issues that he claims should preclude entry of summary judgment in Defendants' favor. First, Sciacca argues that he is unable to evaluate effectively Defendants' application of the relevant exemptions because Defendants have not provided an adequate *Vaughn* index. Second, Sciacca contends that summary judgment is not warranted because Defendants acted in bad faith when they initially claimed that they could find no documents responsive to his FOIA request. (Pl.'s Opp. to Defs.' Mot. for Summ. J. ("Pl. Opp."), ECF No. 23, at 5-7.)

## B. The Magistrate Judge's Report and Recommendation

On October 11, 2011, the Court referred Defendants' summary judgment motion to Magistrate Judge Facciola for a Report and Recommendation regarding the motion. (See Order Referring Case to Magistrate Judge, ECF No. 28.)  On February 16, 2012, Magistrate Judge Facciola issued such a report, which concluded that the Hardy Declaration was insufficient as a matter of law to support all of the Defendants' justifications for the withholding of records, and thus that Defendants' summary judgment motion should be denied.  (*See* Report and Recommendation, ECF No. 31, at 3.)  Specifically, Magistrate Judge Facciola concluded that the Hardy Declaration had failed to demonstrate that the pages Defendants had fully withheld contained no additional reasonably segregable information.  (*Id.*)[3]

On March 1, 2012, Defendants filed a timely objection to the Magistrate Judge's report.  (Defs.' Objections to the Magistrate Judge's Report and Recommendation ("Defs.' Obj."), ECF No. 32.)  Defendants argued that the Hardy Declaration satisfied their burden of showing that the records withheld in full were not reasonably segregable through its statement that any non-exempt information in these records would amount to merely "a patchwork of unintelligible text."  (*Id.* at 8.)

## II.  LEGAL STANDARDS

### A. An Agency's Obligation Under FOIA

FOIA "generally requires the disclosure, upon request, of records held by a federal government agency[.]"  *Judicial Watch, Inc. v. U.S. Dep't of the Treasury*, 796 F. Supp. 2d 13, 18 (D.D.C. 2011).  Specifically, FOIA provides in relevant part that

---

[3] The report did not address Sciacca's arguments about the lack of a *Vaughn* index or Defendants' bad faith.

> [E]ach agency, upon any request for records which (i) reasonably
> describes such records and (ii) is made in accordance with published rules
> stating the time, place, fees (if any), and procedures to be followed, shall
> make the records promptly available to any person.

5 U.S.C. § 552(a)(3)(A). FOIA "was enacted to facilitate public access to Government

documents," *U.S. Dep't of State v. Ray*, 502 U.S. 164, 171 (1991), in order to provide

"a means for citizens to know 'what their Government is up to.'" *Nat'l Archives &*

*Records Admin. v. Favish*, 541 U.S. 157, 171 (2004). However, "[i]n enacting FOIA,

the Congress sought to balance the public's interest in governmental transparency

against legitimate governmental and private interests [that] could be harmed by release

of certain types of information." *United Tech. Corp. v. U.S. Dep't of Def.*, 601 F.3d

557, 559 (D.C. Cir. 2010) (internal quotation marks and citations omitted). To that end,

"Congress included nine exemptions permitting agencies to withhold information from

FOIA disclosure." *Judicial Watch*, 796 F. Supp. 2d at 23.

Whenever it invokes one of the nine FOIA exemptions, a government agency

bears the burden of demonstrating that the records requested do in fact qualify for that

exemption. *See Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C.

Cir. 2003). Moreover, even if a portion of the records is justifiably withheld pursuant

to one of the enumerated exemptions, "[a]ny reasonably segregable portion of a record

shall be provided to any person requesting such record after deletion of the portions

which are exempt[.]" 5 U.S.C. § 552(b). "The government bears the burden of

demonstrating that no reasonably segregable material exists in the withheld documents"

and "must provide[ ] a detailed justification and not just conclusory statements to

demonstrate that all reasonably segregable information has been released." *Barouch v.*

*DOJ*, No. 12-cv-0129, 2013 WL 4494686, at *17 (D.D.C. Aug. 23, 2013) (internal quotation marks and citations omitted).

"Because of its unique evidentiary configuration, the typical FOIA case 'distorts the traditional adversary nature of our legal system's form of dispute resolution.'" *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 145-46 (D.C. Cir. 2006) (quoting *King v. DOJ*, 830 F.2d 210, 218 (D.C. Cir. 1987)). "When a party submits a FOIA request, it faces an 'asymmetrical distribution of knowledge' where the agency alone possesses, reviews, discloses, and withholds the subject matter of the request." *Id.* (quoting *King*, 830 F.2d at 218). "Accordingly, the FOIA places the burden on the agency to establish its right to withhold information under one of the enumerated FOIA Exemptions. An agency may do so through producing a *Vaughn* index, which is an affidavit that indexes and specifically describes withheld or redacted documents and explains why each withheld record is exempt from disclosure." *Schoenman v. FBI*, 604 F. Supp. 2d 174, 196 (D.D.C. 2009) (citing *King*, 830 F.2d at 219). An agency may also rely upon "sufficiently detailed affidavits or declarations" in discharging its burden under FOIA. *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 88 (D.D.C. 2009).

### B. Summary Judgment In FOIA Cases

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife*, 623 F. Supp. 2d at 87 (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 74 (D.D.C. 2007)). Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when the pleadings, the discovery and disclosure materials on file, and any affidavits, "'show that there is no genuine issue as to any material fact and that the movant is entitled to a

judgment as a matter of law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. P. 56). In the FOIA context, a district court reviewing a motion for summary judgment conducts a de novo review of the record, and the responding federal agency bears the burden of proving that it has complied with its obligations under the FOIA. 5 U.S.C. § 552(a)(4)(B); *see also In Defense of Animals v. Nat'l Insts. of Health*, 543 F. Supp. 2d 83, 92-93 (D.D.C. 2008) (same). The court must analyze all underlying facts and inferences in the light most favorable to the FOIA requester. *See Wills v. DOJ*, 581 F. Supp. 2d 57, 65 (D.D.C. 2008). As such, summary judgment for an agency is only appropriate after the agency proves that it has "fully discharged its [FOIA] obligations[.]" *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citing *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1382 (8th Cir. 1985)).

A court may award summary judgment based solely upon the information provided in affidavits or declarations when the affidavits or declarations describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Serv., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir.1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

### C. Review Of A Magistrate Judge's Report And Recommendation

"[A] magistrate judge's report and recommendation is reviewed de novo." *Bode & Grenier, LLP v. Knight*, 821 F. Supp. 2d 57, 60 (D.D.C. 2011) (internal quotation marks and citation omitted). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b). When objecting to a report and recommendation, "the parties may not present new issues or arguments to the district judge; rather, only those issues that the parties have raised in their objections to the Magistrate Judge's report will be reviewed by this court." *M.O. v. D.C.*, No. 11-cv-1695, 2013 WL 5424705 (D.D.C. Sept. 30, 2013) (internal quotation marks and citation omitted). "And 'when a party makes conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error.'" *Id.* (quoting *Alaimo v. Bd. of Educ. of the Tri–Valley Cent. Sch. Dist.*, 650 F. Supp. 2d 289, 291 (S.D.N.Y. 2009).

## III.   ANALYSIS

Defendants here maintain that they have fully complied with their FOIA obligations by conducting an adequate search for documents responsive to Sciacca's request, by producing all responsive, reasonably segregable records, and through the Hardy Declaration, by carrying their burden of justifying their withholding or redaction of certain records. Accordingly, Defendants maintain that there is no remaining issue of material fact, and therefore that summary judgment should be granted in their favor. (Defs.' Br. at 1.)

In considering the pending motion for summary judgment, the ultimate question this Court must address is whether Defendants have carried their burden of justifying the invocation of various FOIA exemptions to redact and withhold documents that would otherwise be responsive to Sciacca's FOIA request. Of course, in order for this Court to make that determination, Defendants must provide sufficient information regarding the records that were redacted or withheld in their entirety and also Defendants' reasons for treating certain responsive records in this fashion; here, this question of whether or not Defendants here have provided sufficient information about their withholdings is the crux of the current dispute. Magistrate Judge Facciola concluded that the Hardy Declaration does not provide adequate support for Defendants' arguments regarding segregability. Moreover, Sciacca maintains that Defendants have not provided a sufficient *Vaughn* index as a matter of law, and that Defendants acted in bad faith such that the Hardy Declaration—which has been offered as evidence regarding how the agency discharged its FOIA obligations—should not be accorded a presumption of good faith. For the reasons explained below, this Court concludes that Defendants have fallen short of their duty to provide adequate information regarding the redactions and withholdings, and that, without more information, this Court cannot evaluate whether Defendants have properly employed the various exemptions pursuant to which Defendants redacted and withheld the documents in question.

### A. Defendants Have Failed To Provide Adequate Support For Their Conclusory Statement Regarding Segregability

"If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the

non-exempt portions are inextricably intertwined with exempt portions." *Salas v. Office of Inspector Gen.*, 577 F. Supp. 2d 105, 112 (D.D.C. 2008) (citing *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022 (D.C. Cir. 1999)). In order to justify withholding an entire record on the grounds that any non-exempt information is "inextricably intertwined" with exempt information, an agency "'must demonstrate [to the Court] that it cannot segregate the exempt material from the non-exempt and must disclose as much as possible.'" *Defenders of Wildlife*, 623 F. Supp. 2d at 90 (quoting *Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 74 (D.D.C. 2003)). Indeed, "[b]efore approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007). And while "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," *id.* at 1117, "a blanket declaration that all facts are so intertwined to prevent disclosure under the FOIA does not constitute a sufficient explanation of non-segregability. . . . rather, for *each* entry the defendant is required to specify in detail which portions of the document are disclosable and which are allegedly exempt." *Wilderness Soc'y v. Dep't of Interior*, 344 F. Supp. 2d 1, 19 (D.D.C. 2004) (emphasis in original) (internal quotation marks and citations omitted).

As noted above, Magistrate Judge Facciola's Report and Recommendation found that Defendants had failed to carry their burden of showing the documents withheld in full contained no reasonably segregable information. The Report and Recommendation specifically takes issue with paragraphs 87 and 88 of the Hardy Declaration, which provide in relevant part:

(87) After extensive review of the documents at issue, it has been determined that there is no further reasonably segregable information which may be released. The fully withheld documents are not segregable in that the extensive redactions would only cause a patchwork of unintelligible text. Thus, the FBI should not be required to segregate these words and phrases from disclosure.

*   *   *

(88) The FBI has processed and released all reasonably segregable information from the records responsive to plaintiff's request to the FBI.

(*See* Report and Recommendation at 2-3.)  Magistrate Judge Facciola found that these statements were inadequate as a matter of law to meet the standard articulated above.

In their objection to the magistrate judge's Report and Recommendation, Defendants point out that the focus of FOIA is on the substance of the documents subject to a request rather than the individual words, and thus they are not required to disclose documents where extensive redactions would cause only "a patchwork of unintelligible text" to be produced.  (Defs.' Obj. at 4-6.)  Defendants also attempt to distinguish the cases Magistrate Judge Facciola relied upon in his report, arguing that those cases did not address situations involving the production of heavily redacted documents.  (*Id.* at 6-7.)  Defendants argue that, because of these factors, they should not be required to expend the effort to redact and produce the withheld documents.  (*Id.* at 7-8.)

Defendants are correct in their recitation of the prevailing legal standard, but miss the point of Magistrate Judge Facciola's recommendation.  While it is true that Defendants need not produce documents where redactions would cause them to have "minimal or no information content," *Mead Data Cent., Inc. v. Dep't of the Air Force*,

566 F.2d 242, 261 n. 55 (D.C. Cir. 1977), Defendants must do more than simply *state* that they withheld documents for this reason. Rather, they must give the Court some basis on which to evaluate their claim that no reasonably segregable information exists in those documents. Thus, the question at this point is not whether the withheld documents satisfy the stated exemption, but whether the Hardy Declaration contains enough information for the Court to assess—and potentially to concur with— Defendants' conclusion that there is no reasonably segregable information in those documents. *See, e.g.*, *Wilderness Soc'y*, 344 F. Supp. 2d at 18 ("[T]he segregability question turns on whether the agency has sufficiently explained why there was no reasonable means of segregating factual material from the claimed privileged material.")

Here, while the Hardy Declaration is lengthy, and provides a reasonably detailed description of the various types of exemptions that Defendants maintain are applicable to Sciacca's documents, it does not provide *any* information on the segregability of the documents that were entirely withheld. Indeed, the entire discussion of segregability in the 42-page Declaration amounts to (1) the conclusory statements cited above; and (2) an equally conclusory statement that "[e]very effort was made to provide plaintiff with all reasonably segregable portions of releasable material." (Hardy Decl. ¶ 37.) These are quintessentially the type of "blanket declarations" that do not suffice to carry an agency's burden of showing that certain documents may be withheld in full. *Wilderness Soc'y*, 344 F. Supp. 2d at 19. Indeed, based on the information Defendants have thus far provided, this Court cannot even ascertain which documents the FBI has entirely withheld, as opposed to those it has produced with redactions. Defendants have clearly

failed to provide this Court with sufficient information for it to make the required "specific findings of segregability regarding the documents to be withheld." *Sussman*, 494 F.3d at 1116. Consequently, the Court will adopt the magistrate judge's reasoning and conclusion regarding segregability, and will deny Defendants' motion for summary judgment partly on this ground.

### B. Defendants Have Not Provided A Detailed Description Of The Documents Produced And The Information Withheld

Additionally, despite the complex system that Defendants used to label and identify various pages of their response to Sciacca's FOIA request, Defendants have missed the mark with respect to a much more fundamental task: their duty to provide a straightforward listing of the documents and information that have been withheld pursuant to a FOIA exemption. As noted above, because of the information asymmetries inherent in the FOIA system, the agency bears the burden of justifying any withholding of otherwise responsive information. *See, e.g.*, *Bigwood*, 484 F. Supp. 2d at 74. "To enable the Court to determine whether documents properly were withheld, the agency must provide a detailed description of the information withheld through the submission of a so-called 'Vaughn Index,' sufficiently detailed affidavits or declarations, or both." *Defenders of Wildlife*, 623 F. Supp. 2d at 88; *see also Oglesby v. Dep't of the Army*, 79 F.3d 1172, 1178 (D.C. Cir. 1996); *Vaughn v. Rosen,* 484 F.2d 820, 827-28 (D.C. Cir. 1973). The *Vaughn* Index and/or accompanying affidavits or declarations must "provide[ ] a relatively detailed justification, specifically identif[y] the reasons why a particular exemption is relevant and correlat[e] those claims with the particular part of a withheld document to which they apply." *Judicial Watch v. FDA*, 449 F.3d at 146 (quoting *Mead Data*, 566 F.2d at 251). While there is no set form for

these submissions, the agency should "'disclose as much information as possible without thwarting the exemption's purpose.'" *Hall v. DOJ*, 552 F. Supp. 2d 23, 27 (D.D.C. 2008) (quoting *King*, 830 F.2d at 224).

In this case, Defendants rely exclusively on the Hardy Declaration to justify their redaction and withholding of various documents that apparently would otherwise be responsive to Sciacca's FOIA request. But the Hardy Declaration is manifestly insufficient as a matter of law to allow the Court to assess the applicability of the FOIA exemptions it discusses and thereby grant summary judgment in Defendants' favor.

First, and most important, neither the Declaration itself nor Defendants' summary judgment papers bother even to list or describe the responsive documents at issue. In the Hardy Declaration and elsewhere in their papers, Defendants refer only to the "pages" that they have produced, redacted, or withheld, and identify such pages only by Bates number. (*See, e.g.*, Defs.' Br. at 6-7; Hardy Decl. ¶¶ 45, 48, 50, 52.) Nowhere do Defendants explain what types of documents these pages belong to, who created the documents and for what purpose, and how the exemptions relate to the nature of the documents themselves. Nor do Defendants identify whether the "pages" are part of stand-alone, single-page documents, or comprise parts of various multi-page documents that Defendants identified as responsive to Sciacca's document request. Similarly, although all parties acknowledge that Defendants redacted some of the responsive documents while withholding others completely, neither the Hardy Declaration nor Defendants' summary judgment brief provides any information about which specific documents fall into which category (produced in full, redacted, or withheld) and why.

Such information is unquestionably necessary "to enable the court and the opposing party to understand the withheld information in order to address the merits of the claimed exemptions," *Judicial Watch v. FDA*, 449 F.3d at 150, and without this type of information, it is simply impossible for the Court to determine whether the exemptions were properly applied. As a hypothetical example, unless the agency represents that a certain withheld document spanning pages Bates numbered SCIACCA-001-008 was a report from an FBI Special Agent created on a particular date concerning information provided by a confidential source (as opposed to, say, a news story reporting on issues related to Sciacca's prosecution), the Court cannot properly evaluate whether and to what extent a claimed exemption applies to that document. And having not provided basic document-identifying information regarding the production in this case, Defendants have failed to meet their obligation to "disclose as much information as possible without thwarting the exemption's purpose." *Hall*, 552 F. Supp. 2d at 27.

In short, the Hardy Declaration seems to put the cart before the horse insofar as it elaborately identifies Defendants' asserted exemptions, but neglects to provide an overall picture of the universe of documents at issue as is necessary for the Court to be able to put those exemption justifications in the proper context. Given the specifics of this case, an adequate affidavit, declaration, or *Vaughn* index will include a description of each document (and, wherever possible, the date created and reason for its creation); the Bates ranges associated with each document; and the exemptions that arguably apply to each document, along with the reasons for the asserted exemption. Notably, because there are only 600 "pages" at issue in this case—and presumably far fewer

documents— providing adequate supporting documentation in the manner described should not place an undue burden on Defendants.[4]

### C. Defendants Did Not Act In Bad Faith

Finally, the Court turns to Sciacca's contention, made in his opposition to Defendants' motion for summary judgment, that the FBI acted in bad faith in regard to its initial response to his FOIA request and thus the Hardy Declaration should be discredited. Sciacca points to the fact that the FBI initially denied that the agency had any responsive documents, and then, (in Sciacca's words) the agency "mysteriously 'found' his 'responsive' materials." (Pl. Opp. at 6.)

Although evidence of bad faith can be used to rebut the "presumption of good faith" that otherwise attaches to affidavits or declarations submitted in support of a FOIA summary judgment motion, *SafeCard Serv.*, *Inc.*, 926 F.2d at 1200; *see also Moore*, 916 F. Supp. at 35-36, it is not enough for a plaintiff "to make purely speculative claims about the existence and discoverability of other documents." *Justice v. IRS*, 798 F. Supp. 2d 43, 46 (D.D.C. 2011) (internal quotation marks and citation omitted). Here, even if the fact that the FBI initially claimed that it could not locate any records responsive to Sciacca's request evidenced bad faith—and this Court is not convinced that it does— this evidence relates only to the FBI's efforts regarding the adequacy of its *search* for responsive documents, and Sciacca has expressly disavowed any challenge to the adequacy of the FBI's search. (*See* Pl. Opp. at 7 ("Plaintiff would

---

[4] To be clear, to the extent that the rationale for the redaction or withholding related to each of the "code categories" in the Hardy declaration is consistent across documents, Defendants may refer back to such rationale and need not repeat it with respect to each category applied to each document listed in the expanded *Vaughn* index. What Defendants need to do—and what they have thus far failed to do—is provide enough information about the documents themselves so that the Court can understand why a particular code category is relevant to a particular document.

also state that the dispute is not that there was insufficient search of the FBI's files of that the searches that were done were inadequate; but that the FBI is incorrectly withholding and redacting materials that are responsive to the request and releasable to Plaintiff.").)  Sciacca makes no allegations regarding bad faith with respect to the *withholding* of responsive information, which, by Sciacca's own admission, is the only issue before the Court.  Accordingly, the Court finds that there is no evidence that the FBI acted in bad faith in withholding or redacting documents responsive to Sciacca's request.

## IV.    CONCLUSION

For the reasons discussed above, the Court finds that Defendants have not provided sufficient information to permit an assessment of whether they have produced all reasonably segregable information, and have also failed to submit a sufficiently detailed affidavit, declaration, or *Vaughn* index in support of Defendants' contention that they have satisfied their FOIA obligations.  Accordingly, Defendants' motion for summary judgment is **DENIED** without prejudice.  Once they have provided supplemental declarations, or a *Vaughn* index, in a manner consistent with this opinion and the accompanying order, Defendants may renew their motion.

DATE:  March 6, 2014                              *Ketanji Brown Jackson*
                                                  _____
                                                  KETANJI BROWN JACKSON
                                                  United States District Judge